**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michael E. Tennenbaum,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>Arizona City Club, Inc., an Arizona corporation,<br><br>　　　　Defendant. | No. CV-05-1414-PHX-FJM<br><br>**ORDER** |

　　The court has before it Defendant's Motion for Partial Summary Judgment (doc. 7), Plaintiff's Response (doc. 17), Plaintiff's Cross-Motion for Summary Judgment on the Enforceability of the Option and on Counts I and II (doc. 18), Defendant's Reply and Response (doc. 23), and Plaintiff's Reply (doc. 25). Following a hearing, we asked the parties to submit supplemental memoranda, and we have now considered Defendant's Supplemental Memorandum (doc. 29) and Plaintiff's Supplemental Brief (doc. 30). For the reasons set forth below, we grant Plaintiff's Cross-Motion for Summary Judgment and deny Defendant's Motion for Partial Summary Judgment.

I.

　　Plaintiff was the principal of Arizona City Development Corporation ("ACDC"), which was the developer of a real estate community known as "Arizona City," located in

Pinal County, Arizona. On or about April 7, 1998, ACDC was liquidated and plaintiff became the successor to ACDC. By 1979, after twenty years of development by ACDC, Arizona City consisted of (i) approximately 3,500 acres of land subdivided into approximately 9,350 lots, (ii) an undeveloped parcel of 300 acres, and (iii) substantial acreage set aside for recreational and community areas (the "Amenities"). The Amenities consisted of (i) an 18-hole golf course, (ii) a country club facility, (iii) a 22-acre park, (iv) a 48-acre lake, (v) a racquet club and park, and (vi) a community center and library. Defendant was formed on September 28, 1979, to assume ownership, maintenance and operation of the Amenities.

On October 10, 1979, ACDC and defendant entered into a series of agreements (collectively, the "Agreements") to effectuate the transfer of the Amenities to the defendant. The Agreements included (i) a Master Agreement, (ii) a Special Warranty Deed, (iii) an Option Agreement ("Option"), (iv) a Deed of Trust and Assignment of Rents, (v) a Chattel Security Agreement, (vi) a Bill of Sale, (vii) a Miscellaneous Agreement, and (viii) a Maintenance Agreement.

During the following years, defendant transferred the park and racquet club to the plaintiff and the lake to a third party. The Option Agreement was only modified once to reflect the transfer of the racquet club. Defendant still holds title to the golf course, the country club and the community center (collectively, the "Property"), and items of personalty that are subject to the Security Agreement.

II.

The first issue presented is whether the transfer of certain portions of the Amenities served to terminate or render unenforceable the underlying Option. The Option provides in relevant part:

> For Ten and no/100 ($10.00) Dollars and other good and valuable consideration, the receipt of which is hereby acknowledged, [defendant] hereby granted [sic] to [ACDC] the option to purchase [the Amenities].
> . . .

1. **Option Price.** The price to be paid upon the exercise of this option is the greater of One and no/100 ($1.00) Dollar or the amount of all indebtedness existing at the option exercise date from [defendant] to [ACDC], which option price may constitute a set-off to said indebtedness.

2. **Option Condition.** As a condition to the exercise of this option [defendant] must be in default under that Master Agreement of even date hereof between [defendant] and [ACDC].

3. **Exercise.** Upon the occurrence and continuation of said condition, this option may be exercised by [ACDC] upon giving thirty (30) days notice to [defendant] at which time [defendant] will convey to [ACDC] the option property, by special warranty deed, free and clear of all liens and encumbrances existing with respect to the property when it was conveyed from [ACDC] to [defendant].

4. **Duration of Option.** This option may be exercised at any time within 99 years from the date hereof.

On February 1, 2005 and again on March 25, 2005, plaintiff gave defendant written notice that defendant was in default under the Agreements for, among other things, allowing the liquor license to lapse, failing to pay taxes when due, proposing to abandon the community center, and failing to properly maintain and operate the Amenities. On March 25, 2005, plaintiff attempted to exercise the Option by giving written notice to defendant that he intended to reacquire the property pursuant to the Option, and tendering a check to defendant in the amount of $1.00. Defendant has refused to reconvey the Property.

In Count I of the Complaint, plaintiff seeks (i) specific performance of the Option, and (ii) a declaratory judgment that (a) defendant breached the Agreements, and (b) plaintiff's exercise of the Option was valid and enforceable. In Count II, plaintiff alleges that defendant breached the Agreements and seeks to recover damages he incurred as a result of that breach. In its Motion for Partial Summary Judgment, Defendant seeks an order declaring the Option unenforceable and terminated because portions of the Amenities have been sold or transferred. Plaintiff's Cross-Motion for Summary Judgment requests a ruling on the issue of the enforceability of the Option and on Counts I and II. With respect to Count II, however, plaintiff seeks a determination of liability only on the breach of the contract claim, leaving the amount of damages for a later determination.

### III.

Defendant argues that in the absence of a provision authorizing the purchase of part of the option property, an optionee cannot elect to purchase less than the whole. Instead, an option must be exercised exactly according to the terms and conditions of the option or the option is unenforceable. According to defendant, because there was no provision for purchasing less than the whole, the Option terminated by virtue of the transfer of some of the Amenities, and plaintiff's attempt to exercise the Option was ineffective.

Defendant relies on cases in which courts have held that an option must be exercised strictly according to the terms and conditions in the option. These cases are not applicable here, however, because they merely address how the option is exercised, such as whether the purchase price was tendered properly, whether the exercise was timely, and whether proper notice was given. See, e.g., Andrews v. Blake, 205 Ariz. 236, 246, 69 P.3d 7, 17 (2003) (timeliness and method of exercise); Pinnacle Peak Dev. v. TRW Inv. Corp., 129 Ariz. 385, 388, 631 P.2d 540, 543 (Ct. App. 1980) (timeliness of exercise). In the present case, it is undisputed that plaintiff complied with the procedures required to exercise the Option.

In addition, defendant relies on cases in which courts have held that an attempt to purchase only part of the property covered by an option is an ineffective exercise of the option. In Fries v. Fries, 470 N.W.2d 232 (N.D. 1991), the optionees attempted to exercise an option by purchasing only 6/7 of the property, leaving the optionor with a 1/7 interest. The court held that, in an effort to "prevent[] the forced splitting or the forced joint ownership of property," an optionee cannot exercise part of the option and force the optionor to convey only part of the option property. Id. at 234. See also Hitchcock v. Page, 14 Cal. 440, 443 (1859) (holding that "[t]he vendee must take, or offer to take it all; he cannot take such part as he chooses and reject the rest").

These cases are also distinguishable from the case before us where plaintiff's exercise of the Option will neither serve to split the property, nor force joint property ownership with defendant. Rather, plaintiff seeks to exercise the option with respect to the entire remaining

- 4 -

property. A more instructive case is Martinesi v. Tidmore, 158 Ariz. 53, 55, 760 P.2d 1102, 1104 (Ct. App. 1988), where the optionor's conveyance of the entire option property to a third-party did not discharge the duty or liability of the optionor under the option. See also Sargent v. Halsey, 348 N.Y.S.2d 160, 164, 42 A.D.2d 375, 380-81 (N.Y. App. Div. 1973) (holding the option remained in effect despite optionor's sale of part of the option property). As in Martinesi, the transfer of only a portion of the Amenities will similarly not relieve defendant of its remaining obligations under the Option.

Even if we assume that defendant's transfer of part of the Amenities precluded plaintiff from exercising the Option strictly according to its terms, defendant's unilateral act in transferring such property excused plaintiff's strict compliance. It is well-settled that a party to a contract "cannot prevent the fulfillment of a condition precedent and later rely on the failure of the condition to argue that no contract exists." Johnson Intern., Inc. v. City of Phoenix, 192 Ariz. 466, 471, 967 P.2d 607, 612 (Ct. App. 1998). We conclude that defendant's conveyance of portions of the Amenities does not render the Option unenforceable.

### IV.

Having concluded that the Option is enforceable, we next turn to the question of whether defendant breached the Agreements, a prerequisite to plaintiff's right to exercise the Option. Plaintiff contends that defendant breached the Agreements in several respects, including (i) allowing several liens against the Property, in violation of paragraph 7.6 of the Master Agreement, which prohibits "a lien of any kind to be imposed upon any amenity or any part of any amenity, or any personal property"; (ii) allowing a lien against the liquor license due to delinquent taxes, in violation of the Master Agreement; and (iii) abandoning the community center when it sent a letter to plaintiff on February 1, 2005, stating that defendant was "not financially able to support the Community Center any longer, [and] . . . will cease paying the taxes and insurance . . . and close the doors." PSOF at 23.

1   Defendant does not dispute the foregoing facts, but rather contests their legal
2   significance. For example, defendant admits that it has permitted liens on the Amenities, but
3   simply argues that "Plaintiff advances no reason why these amenities can be operated without
4   incurring debt for maintenance and improvement." <u>Defendant's Supplemental Memorandum</u>
5   at 3. This argument ignores the fact that the Master Agreement specifically prohibits "a lien
6   of any kind" on the Amenities. By allowing liens on the Amenities, defendant breached the
7   Master Agreement. Having thus concluded, we need not consider other instances of
8   defendant's alleged breach.

9   Finally, defendant briefly raises equitable arguments that plaintiff's claim is barred by
10  various equitable defenses, including estoppel, laches, waiver, abandonment, statute of
11  frauds, and unconditional tender of performance. It appears that defendant's waiver,
12  abandonment, statute of frauds, and unconditional tender defenses rely primarily on the fact
13  that there have been conveyances of portions of the Amenities to plaintiff or third parties, and
14  that these conveyances somehow serve to deprive plaintiff of his right to exercise the Option.
15  This assertion, without more, is insufficient to support these defenses. The estoppel and
16  laches defenses appear to rely on the fact that defendant has maintained the Amenities since
17  the transfer in 1976, and it would now be unfair to enforce the terms of the Option against
18  defendant. Defendant's maintenance of the Amenities, however, is simply in compliance
19  with its contractual obligations under the Agreements. Defendant's equitable defense claims
20  are without merit.

V.

22  Accordingly, we conclude that defendant breached its obligations under the
23  Agreements and that plaintiff's exercise of the Option was valid and enforceable.

24  Therefore, **IT IS ORDERED DENYING** Defendant's Motion for Partial Summary
25  Judgment (doc. 7), **GRANTING** Plaintiff's Cross-Motion for Partial Summary Judgment

- 6 -

1  (doc. 18), and **DENYING** Defendant's Motion to Amend (doc. 32) as moot.

2  DATED this 8th day of November, 2005.

*Frederick J. Martone*
Frederick J. Martone
United States District Judge